**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | CASE NO. 7:11-CR-28 (HL) |
| **GARY LOCKETT,** | |
| Defendant. | |

**ORDER**

This case is before the Court on Defendant's Motion to Suppress (Doc. 23). An evidentiary hearing was held on November 22, 2011. Upon consideration of the parties' briefs and arguments, the stipulation of facts provided to the Court, and the evidence presented at the hearing, the Motion is denied.

**I.    FACTS**

Beginning at approximately 8:20 a.m. on February 3, 2011, six law enforcement officers conducted surveillance of Defendant's residence located at 708 Raelyn Lane, Enigma, Berrien County, Georgia. Defendant's residence is located in a rural area off of a dirt road. The residence and an outbuilding are both surrounded by a six-foot tall privacy fence. There are two gates providing access through the fence.

Officer Jack Winningham of the Lowndes County Sheriff's Office and Special Agent Andrew Denmark of the Drug Enforcement Administration were

parked in a vehicle approximately 100 yards from Defendant's residence.[1] They surveilled the area using binoculars and a telephoto lens. The officers were looking down into the fenced area and could see the main residence but not the outbuilding. A Dodge Charger and a Ford F-250 were in the fenced area when the officers arrived. The officers could not see inside either the residence or the outbuilding.

At 12:35 p.m., Winningham and Denmark saw Defendant and an unknown male get into the Dodge and leave the residence. The unknown male was holding a white plastic grocery bag, which appeared to have something in it. Defendant drove the Dodge approximately 2,000 feet down the dirt road. The unknown male got out of the car with the plastic bag in his hand. The male crossed the road and walked into the tree line. Defendant then drove back to the residence and, according to Winningham, "kind of ran inside." The officers did not see the unknown male again that day.

Around 3:47 p.m., a black Nissan Altima arrived at the residence. Defendant was still inside at this time. The occupants of the Nissan were later identified as Jason Wynn and Shannon Young. The Nissan left the residence at 4:01 p.m. Winningham notified other officers in the area that the Nissan was leaving the residence. Special Agent Hubert Jordan with the DEA surveilled the

---

[1] Both Winningham and Denmark testified at the suppression hearing.

Nissan from the time it got onto the paved road outside Defendant's house until the time the vehicle reached Highway 82.[2] The Nissan made no stops during that time. Agent Jordan did not see the Nissan while it was on the dirt road immediately outside Defendant's residence. Agent Jordan then turned the vehicle over to Officer Chris Strickland with the Tift County Sheriff's Office to make a traffic stop, which he did at 4:15 p.m. on Highway 82 on the east side of Tifton.[3] Wynn and Young did not stop immediately upon Officer Strickland activating his lights and siren. When Wynn and Young finally stopped, they exited the Nissan and ran. Officer Strickland and Special Agent Jordan chased Wynn and Young on foot for about 400-500 yards. The chase took four minutes at the most.

The traffic stop took place approximately eight to ten miles from Defendant's residence. About four or five officers responded to the scene with their lights and sirens activated. People in the area came out of their houses and stopped in their vehicles on the side of the road to watch.

Wynn and Young were found to be in possession of 58 grams of cocaine and 4 grams of marijuana. Officer Strickland searched one of the suspects and

---

[2] Agent Jordan testified at the suppression hearing.

[3] Officer Strickland also testified at the suppression hearing.

found a cell phone on him.[4] Officer Strickland did not take the phone from the suspect. After both suspects were secured, the suspect with the cell phone was observed talking on the phone while in the back of a patrol car. Agent Jordan got the suspect out of the vehicle and took the phone away. Agent Jordan did not look to see who the suspect was talking to, as he thought he would need a court order to do so. In any event, he did not know Defendant's phone number anyway.

At 4:16 p.m., Denmark and Winningham overheard radio traffic stating that Wynn and Young were running on foot. Denmark estimated the chase to last less than five minutes. Denmark then saw Defendant and an unknown male walk out of the residence. Defendant was talking on a telephone. The two men walked to the rear of the house to where the outbuilding is located. Denmark could not see if they went into the outbuilding. When the men walked back around, the unknown male was on the telephone. The two men then left the residence in the Dodge at 4:39 p.m.

Defendant was stopped about five to six miles away from his residence, at approximately 4:46 p.m. Agent Jordan, who was in charge of the entire operation, arrived about ten minutes after Defendant was stopped. At that time he made the decision to secure the residence. Agent Jordan does not remember

---

[4] Officer Strickland could not remember whether it was Wynn or Young who had the cell phone. For purposes of this Order, it does not matter.

talking to Defendant and observed nothing during the stop to make him believe Defendant knew about the surveillance, though Agent Jordan did not know what he could have observed that would have told him Defendant was aware of the surveillance. No drugs were found in Defendant's vehicle, which made Agent Jordan think there were drugs in the residence.

All of the officers involved in the operation met at the site of Defendant's traffic stop to discuss the next step.  According to Agent Jordan, it took "a while" for all the officers to get there, as some were still at the residence and others were at the Nissan traffic stop. Agent Jordan was also in contact during this time with Special Agent Stripling Luke of the Georgia Bureau of Investigation about applying for a search warrant.

The officers met and discussed what they had seen. They decided that because of the "compound" nature of the property, a certain amount of manpower was needed to secure the residence. The officers had no way of knowing how many people were inside the residence at the time their surveillance began. During the surveillance, thirteen people arrived at the residence. Thirteen people also left the residence, including Defendant, which meant there was at least one unidentified person in the residence.

According to the officers, the decision to secure the residence was based on several factors: (1) they did not know who was in the residence; (2) concerns

about preserving evidence; (3) preventing the destruction of evidence; (4) the amount of traffic coming in and out of the residence during the day; (5) the fact Wynn and Young were found with drugs; (6) suspicions that there were drugs at the residence; (7) the fact either Wynn or Young was on the cell phone while in the police vehicle, which led to a concern that Defendant was tipped off about the police activity; (8) the fact Defendant left the residence after the Nissan was stopped; and (9) the attention drawn by the Wynn and Young traffic stop.

The officers dressed in protective gear, went to the residence, and knocked on the front door. Sophie Gordon, Defendant's girlfriend, answered the door. The officers explained to her that they were there to secure the residence while a search warrant was obtained. The residence was secured at approximately 5:45 p.m. The officers conducted a walk-through of the residence to ensure that there were no occupants other than Ms. Gordon and her two children. During the walk-through, the officers observed in plain view a suspected cocaine press, a money counting machine, and suspected drug packaging materials. The officers remained in the living room area of the residence with Ms. Gordon and the children until the search warrant was signed.  At   approximately 7:05 p.m., Agent Luke presented his Affidavit and Application for Search Warrant to Judge Dane Perkins. In the Affidavit, Agent Luke testified that: (1) law enforcement officers had observed Defendant's residence over the course of the

6

day, culminating in the stop of a Nissan automobile in which cocaine and marijuana were found after it had left the premises; (2) a warrantless entry into Defendant's residence to prevent the destruction of evidence had resulted in the discovery of a cocaine press, money counting machine, and suspected cocaine packaging being found in plain view; (3) a reliable confidential source had identified the premises as a residence Defendant used to store narcotics; (4) the residence is surrounded by a privacy fence with two wooden gates; and (5)

in January of 2011, Wesley Tuff told law enforcement officers that over a series of cocaine purchases from Defendant or through Defendant, he had purchased approximately one kilogram of cocaine. The remainder of the Affidavit deals with Agent Luke's training and Defendant's criminal history.

Judge Perkins signed the search warrant, and the search was executed at 7:25 p.m. The officers located a small amount of marijuana, firearms, and other items of evidence in the residence. The officers located powder cocaine, crack cocaine, marijuana, and a firearm inside a cottage on the premises.[5]

Defendant was arrested and has been charged with one count of possession with intent to distribute cocaine, one count of possession with intent to distribute cocaine base, one count of possession with intent to distribute

---

[5] The parties use the term "cottage" in their stipulation of facts submitted to the Court. The Court assumes the cottage and the outbuilding are the same structure.

marijuana, and one count of possession of a firearm in furtherance of drug trafficking.

Defendant has now moved to suppress all evidence seized by the officers during the warrantless entry into his residence. He further seeks to suppress all evidence seized during the search of his residence pursuant to the search warrant issued by Judge Perkins.

## II.   ANALYSIS

### A.   Warrantless Entry into Defendant's Residence

"A warrantless entry into a suspect's home to search the premises is presumed to be unreasonable." United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002). "A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*) (citation omitted). Exigent circumstances exist "where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v. Morales, 868 F.2d 1562, 1575 (11th Cir. 1989). Defendant contends that the officers' entry into his residence to secure the residence was unlawful because there were no

exigent circumstances.[6] The government bears the burden of proving exigent circumstances. United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2007).

"Recognized situations in which exigent circumstances exist include: 'danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect.'" United States v. Reid, 69 F.3d 1190, 1113 (11th Cir. 1995). Exigent circumstances exist "when there is danger that [ ] evidence will be destroyed or removed." Tobin, 923 F.2d at 1510 (citations omitted). "[T]he need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed." Id. (quotation marks omitted). If the exigency is based on an officer's fear that narcotics will be destroyed or removed, the inquiry is "whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured." Reid, 69 F.3d at 1113. An exigency only allows a limited intrusion into the home, and once in the home, officers may only seize evidence found within plain view. Holloway, 290 F.3d at 1334.

---

[6] While a warrantless entry requires both probable cause and exigent circumstances, Defendant did not specifically argue lack of probable cause until he submitted his reply brief. In his initial motion, he only argued a lack of exigent circumstances. The Court will not consider an argument raised for the first time on reply.

The test of whether exigent circumstances exist is an objective one. <u>Tobin</u>, 923 F.2d at 1510. An officer's subjective intentions are not relevant under the Fourth Amendment. <u>United States v. Hernandez</u>, 418 F.3d 1206, 1210 n. 4 (11th Cir. 2005). In addition, "circumstances are not normally considered exigent where the suspects are unaware of police surveillance." <u>Tobin</u>, 923 F.2d at 1511 (citations omitted). In that situation, the officers could maintain surveillance until they could make a public arrest or obtain a warrant. <u>United States v. Santa</u>, 236 F.3d 662, 669-70 (11th Cir. 2000).

Defendant argues that there was no evidence that the occupants of the residence were aware that they were under surveillance. He contends that the officers could have maintained surveillance and waited to enter the property until the warrant was secured. He also argues that any contention that evidence might be destroyed was just speculation, which is not enough to overcome the warrant requirement. Therefore, according to Defendant, the evidence seized during the warrantless entry, including the cocaine press, money counting machine, and packaging material, should be suppressed.

The Government argues in opposition that the officers acted reasonably in entering and securing the premises. The officers knew that at least one person remained in the residence. They also knew that narcotics may be quickly and easily destroyed. Further, the officers could not see anyone inside the residence

and could not see what the person in the residence was doing. In addition, the officers believed Defendant may have known he was under surveillance, and may have known about the traffic stop of the Nissan. The officers also knew Defendant had an extensive criminal history, particularly for drug distribution related offenses. Finally, the officers knew it would take time to prepare a warrant and have it signed. The Government argues that looking at the totality of the circumstances, the officers reasonably believed exigent circumstances existed when the residence was secured.

The Court agrees with the Government that the officers had an objectively reasonable basis to believe that exigent circumstances existed which required their warrantless entry into Defendant's residence. Wynn and Young, who were stopped after leaving Defendant's residence, were found to be in possession of cocaine and marijuana. Wynn or Young spoke with someone on the telephone, and shortly thereafter Defendant and another male were seen talking on the telephone, going to the outbuilding, and leaving the premises. The officers could not see into the residence or the outbuilding, but knew there was at least one person still in the residence. The Court finds that based on the totality of the circumstances the officers could reasonably have determined that Defendant was aware of the surveillance and that evidence could have been destroyed during the time it took them to get a search warrant.

Accordingly, the Motion to Suppress the evidence seized during the warrantless search, including the cocaine press, money counting machine, and packaging material, is denied.

### B.   Suppression of Evidence Seized During Search Pursuant to the Search Warrant

Defendant also argues that any evidence seized during the search of his residence pursuant to the search warrant be suppressed. Defendant argues that probable cause did not exist at the time the search warrant was issued by Judge Perkins. Defendant states that because the evidence gathered during the warrantless search was illegally obtained, the tainted evidence should not have been included in the Affidavit, nor considered by Judge Perkins in issuing the search warrant.

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983). In applying for the search warrant, Agent Luke listed the items located in plain view of the officers who secured the residence, including the cocaine press, money counting machine, and packaging materials. Officers are allowed to seize evidence found within plain view after entering a residence based on an exigency. Holloway, 290 F.3d at 1334. As the Court has determined there were exigent circumstances

12

sufficient to justify the warrantless entry into Defendant's residence, it was not improper for Agent Luke to list the plain view items in his Affidavit, and it was not improper for Judge Perkins to rely on those items in issuing the search warrant. In the Court's opinion, the cocaine press, money counting machine, and packaging materials were sufficient to establish probable cause for the issuance of the warrant.[7]

Thus, the Motion to Suppress the evidence seized pursuant to the search warrant is denied.

## III.  CONCLUSION

Defendant's Motion to Suppress (Doc. 23) is denied. A pretrial conference will be held in this case on December 20, 2011 at 9:30 a.m. in Macon.

**SO ORDERED**, this the 30th day of November, 2011.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh

---

[7] Defendant argues there are several other reasons the evidence seized pursuant to the search warrant should suppressed, all of which relate to some alleged deficiency in the search warrant affidavit. As the Court has determined that the plain view items should not be suppressed and were sufficient to establish probable cause for the search warrant, it is not necessary to address the other arguments.